# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| In re<br>RYAN PAUL SHIPLEY,<br>　　　　Debtor. | NO. 06-13443-SJS<br>Chapter 7 |
| TRANS UNION LLC, a Delaware limited liability company,<br>　　　　Plaintiff,<br>v.<br>RYAN PAUL SHIPLEY,<br>　　　　Defendant. | ADVERSARY PROCEEDING<br>NO.<br><br>COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF INDEBTEDNESS AND FOR JUDGMENT THEREON |

For its Complaint herein, Trans Union LLC ("Trans Union") states and alleges as follows:

1. <u>Plaintiff and Shipley Debt</u>. Trans Union is a Delaware limited liability company which transacts business in the state of Washington. Trans Union is a creditor of the above-named debtor and is the holder of an unsecured claim for a judgment entered on May 26, 2006 against Ryan Paul Shipley ("Shipley") in United States District Court, Western District of Washington, Civil Case No. CV4-2560-P for

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 1
sk\\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 1 of 16

an award of attorneys' fees and costs in the amount of $17,975.16[1] ("Judgment"). Copies of the Judgment and the court's order granting Trans Union's motion for attorneys' fees are attached hereto as Exhibit A.

2. <u>Defendant</u>. Ryan Paul Shipley ("Shipley") is the debtor in this Chapter 7 bankruptcy case.

3. <u>Jurisdiction</u>. This is an action (1) under 11 U.S.C. § 523(c) for a determination excepting Trans Union's judgment debt from discharge and (2) under 11 U.S.C. § 727(a)(2) and (4) objecting to Shipley's discharge in this Chapter 7 bankruptcy proceeding. This court has jurisdiction over this proceeding under the provisions of 28 U.S.C. § 1334 and 28 U.S.C. § 157.

4. <u>Core Proceeding</u>. This matter is a "core proceeding" under 11 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 157(b)(2)(J).

5. <u>Shipley's Fraudulent Conduct and Frivolous Lawsuit</u>.

In March 2004, Trans Union began investigating Shipley's disputes of inaccurate information listed on his credit report. Shipley sent Trans Union a police report that he claimed was filed with the Everett, Washington Police Department and information on a Washington State law that requires the deletion of accounts from a consumer's credit report when the consumer files a police report alleging that fraud has occurred. Based on such information provided by Shipley, Trans Union deleted numerous accounts from Shipley's credit file that he had listed as fraudulent on the police report.

In May 2004, Trans Union received confirmation from Detective Scott Slagle of the Snohomish County Sherriff's Office that the police report provided by Shipley had

---

[1] Schedule F of Shipley's Chapter 7 Voluntary Petition states the amount of Trans Union's claim as $18,900. Trans Union's Judgment, entered on May 26, 2006, is for $17,975.14. Interest at a rate of 12% per annum has been accruing on the judgment amount; therefore, Trans Union's claim on November 13, 2006 with interest will be $18,991.59.

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 2
sk\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 2 of 16

been altered and did not match police department records. Thereafter, Shipley admitted to Detective Slagle and to Trans Union that he had altered the witness statements and forged signatures in the police reports provided to Trans Union in order to have accounts removed from his credit file. Based on Shipley's admitted alteration and forgery of the police reports provided to Trans Union, as well as other inconsistent information provided by Shipley regarding his use of two Social Security numbers, Trans Union refused to remove several accounts from Shipley's credit file and reinstated previously removed accounts.

In December 2004, Shipley sued Trans Union (erroneously sued as Trans Union Corporation) claming, among other things, that Trans Union had violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq., by inaccurately reporting fraudulent accounts and failing to investigate information thoroughly. Shipley also brought claims for libel and defamation of character.

After failing to properly respond to Trans Union's discovery requests on numerous occasions, thereby prompting Trans Union to file a motion to compel, Shipley filed a motion to voluntarily dismiss his lawsuit against Trans Union with prejudice on November 18, 2005. The court granted Shipley's motion to dismiss the lawsuit, but granted Trans Union's motion for attorneys' fees, pursuant to 15 U.S.C. § 1681n(c), on the ground that Shipley had filed the action in bad faith or for the purpose of harassment because he knew his claims had no merit, but nevertheless filed the lawsuit hoping to harass Trans Union into removing the accurately reported delinquent credit history from his credit file.

6. <u>Trans Union's Final Judgment Against Shipley</u>. On May 25, 2006, the Honorable Marsha J. Pechman granted Trans Union's motion for attorneys' fees. Specifically, the court found that Shipley engaged in bad faith, which the court stated means "not simply bad judgment or negligence, but rather it implies the conscious

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 3
sk\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 3 of 16

doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will."

The court found that "[i]t is undisputed Plaintiff sent altered police records to Trans Union in an attempt to get Trans Union to remove accounts from his credit file. ... In May 2004, Trans Union uncovered the fact that Plaintiff had submitted altered police records.... Plaintiff threatened to sue the company during this time and then filed his complaint in December 2004, despite the justifiable suspicion and obvious confusion that fraud investigators at Trans Union would have had about his credit record given his admitted alteration of police records. For Plaintiff to bring suit against Trans Union after committing such a blatant act of dishonesty strikes the Court as a plain example of filing a lawsuit in bad faith and for purposes of harassment."

The court concluded that Shipley altered police records in an attempt to have accounts deleted from his credit record with Trans Union, gave conflicting explanations for his use of multiple Social Security numbers, and engaged in obstructionist behavior during discovery. Accordingly, the court entered the judgment awarding Trans Union its attorneys' fees and costs in the amount of $17,975.14.

7. <u>Count I: Violation of 11 U.S.C. § 523(a)(2)(A)</u>. The indebtedness of Shipley to Trans Union by reason of the May 26, 2006 judgment is non-dischargeable under the provisions of 11 U.S.C. § 523(a)(2)(A) because said indebtedness was incurred by false pretenses, false representations, and actual fraud, and in the absence of said false pretenses, false representations, and actual fraud by Shipley, Trans Union would not have incurred the losses attributable to Shipley's conduct. Shipley's conduct violates 11 U.S.C. § 523(a)(2)(A); therefore, the indebtedness constitutes a nondischargeable debt.

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 4
sk\\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 4 of 16

8. <u>Count II: Violation of 11 U.S.C. § 523(a)(6)</u>. The indebtedness of Shipley to Trans Union by reason of the May 26, 2006 judgment is non-dischargeable under the provisions of 11 U.S.C. § 523(a)(6) because said indebtedness is for willful and malicious injury caused by Shipley against Trans Union and in the absence of such willful and malicious injury, Trans Union would not have incurred the indebtedness attributable to Shipley's conduct. Shipley's conduct violates 11 U.S.C. § 523(a)(2)(A); therefore, the indebtedness constitutes a nondischargeable debt.

9. <u>Shipley's Fraudulent Conduct in this Chapter 7 Bankruptcy Case</u>. Shipley claims on Schedule A of his Voluntary Petition that the real property located at 1325 – 113th Avenue South, Lake Stevens, Washington (the "Property") was quit claimed to his spouse pursuant to a separation agreement. However, on his Chapter 7 Individual Debtor's Statement of Intention, Shipley states that he will retain the Property and continue to make regular payments. Question 10 of the Statement of Financial Affairs requires Shipley to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." Shipley does not list the Property he allegedly quit claimed to his former spouse and marked "none" in response to Question 10. Question 16 of the Statement of Financial Affairs requires Shipley to identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor "…if the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within eight years immediately preceding the commencement of the case…" Shipley does not list the name of his former spouse and marked "none" in response to Question 16.

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 5
sk\\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 5 of 16

The Snohomish County Superior Court records show the petition for legal separation of Heather Shipley and Ryan Paul Shipley was filed on September 1, 2006 with a decree of legal separation entered on September 13, 2006. A search of the Snohomish County Auditor's Official Public Records database does not disclose that a quit claim deed has been recorded granting Shipley's interest in the Property to his former spouse. A true and correct copy of the search results from the Snohomish County Auditor's online database is attached hereto as Exhibit B.

10. <u>Count III: Violation of 11 U.S.C. § 727(a)(2)</u>. Shipley has acted with intent to hinder, delay, or defraud his creditors by transferring, removing or concealing property within one year before the date of the filing of his petition in violation of 11 U.S.C. § 727(a)(2). Shipley further knowingly and fraudulently, in connection with the case, gave or offered property to his former spouse in violation of 11 U.S.C. § 727(a)(4). Based on the foregoing, Shipley should not be granted discharge in this Chapter 7 bankruptcy case.

WHEREFORE, Trans Union prays for relief as follows:

1. For an order and decree denying Shipley's discharge in this Chapter 7 bankruptcy proceeding pursuant to 11 U.S.C. § 727(a)(2) and (4).

2. For an order and decree that the indebtedness of Shipley to Trans Union is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6) in the amount of $17,975.14, together with interest thereon and attorney's fees.

3. For all costs and attorney's fees as allowed by law.

4. For such other and further relief as this court deems just and equitable.

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 6
sk\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 6 of 16

DATED this _____ day of November, 2006.

MONTGOMERY PURDUE BLANKINSHIP
& AUSTIN PLLC


By: /s/ George W. Akers
George W. Akers
WA State Bar No. 00498
Sandy K. Lee
WA State Bar No. 35463
Benjamin I. VandenBerghe
WA State Bar No. 35477
Attorneys for Plaintiff

COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF
INDEBTEDNESS - 7
sk\c:\mpba\trans union\shipley bankrcomplaint 2006 1113.doc

MONTGOMERY PURDUE BLANKINSHIP & AUSTIN PLLC
ATTORNEYS AT LAW
5500 BANK OF AMERICA TOWER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

Case 06-01457-SJS    Doc 1    Filed 12/07/06    Ent. 12/07/06 11:09:41    Pg. 7 of 16

FILED ___ ENTERED
LODGED ___ RECEIVED

MAY 2 6 2006

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# United States District Court
## WESTERN DISTRICT OF WASHINGTON

RYAN PAUL SHIPLEY,

    Plaintiff

v.

TRANS UNION CORPORATION,

    Defendant.

**JUDGMENT IN A CIVIL CASE**

CASE NO. C04-2560P

___ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

XX **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: Defendant is awarded $17,975.14 in attorney fees and costs.

Dated: May 26, 2006

BRUCE RIFKIN, Clerk of Court

By _____, Deputy Clerk

RECEIVED
MAY 2 6 2006
MONTGOMERY PURDUE
BLANKINSHIP & AUSTIN PLLC

**EXHIBIT A**

RECEIVED
MAY 25 2006
MONTGOMERY PURDUE
BLANKINSHIP & AUSTIN PLLC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN PAUL SHIPLEY,<br><br>    Plaintiff,<br><br>v.<br><br>TRANS UNION CORPORATION,<br><br>    Defendant. | No. C04-2560P<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES |

This matter comes before the Court on Defendant Trans Union Corporation's Motion for Attorneys' Fees. (Dkt. No. 29). Having considered the papers and pleadings submitted by the parties and the balance of the record in this case, the Court finds that Plaintiff filed this case and pursued this action in bad faith and for purposes of harassment. The Court further finds that Defendant's request for attorneys' fees and costs is reasonable. Therefore, the Court GRANTS the Defendant's motion and awards $17,975.14 in attorneys' fees to Defendant Trans Union Corporation.

### Background

Based on discovery responses that Plaintiff Ryan Paul Shipley filed with the Court (Dkt. No. 19), it appears that Plaintiff filed a complaint with the Everett, Washington Police Department in 2002 regarding an identity theft incident. According to police records, Mr. Shipley apparently learned of the identity theft when he received a letter from the Washington Department of Licensing stating that his driver's license was going to be suspended for his failure to respond to a citation. Plaintiff reported that someone unknown to him had falsely used his name at the scene of an

ORDER - 1

COPY TO CLIENT 5/26/06

automobile accident. Police investigators found the individual who had done so. Plaintiff provided the police with witness statements in connection with this matter.

Plaintiff apparently contacted various retailers and collection agencies, claiming that a number of accounts under his name had not been initiated by him and were the result of fraud. Plaintiff has submitted documents indicating that he was relieved of responsibility for accounts originating with (among other companies) Verizon Wireless, Park Dansan, Discover, and West Coast Adjusters. (Dkt. No. 37, Exs. N - Q).

In March 2004, Trans Union investigator Jennifer Terrell began investigating Plaintiff's case after a co-worker discovered that Plaintiff had used two Social Security numbers. Ms. Terrell indicated that she spoke to Plaintiff on March 10, 2004 and he asked her about a Washington state law that requires the deletion of accounts from a consumer's credit report when the consumer files a police report alleging that fraud has occurred. Ms. Terrell stated that on March 12, 2004, Plaintiff sent her the state law he was referring to and she deleted numerous accounts from Plaintiff's credit file that he had listed as fraudulent on a police report sent to Trans Union.

On May 17, 2004, Ms. Terrell spoke with Detective Scott Slagle of the Snohomish County Sheriff's Office. She sent Detective Slagle a copy of a witness statement from a police report that Plaintiff had sent to Trans Union. Detective Slagle confirmed that Plaintiff had altered the witness statement and that it did not match police records. On May 24, 2004, Ms. Terrell spoke to Plaintiff concerning Detective Slagle's statements, and he admitted that he had altered the witness statements sent to Trans Union in order to have accounts removed from his file. It appears that Plaintiff later sent unaltered police records to Trans Union in October 2004.

Aside from Plaintiff's admitted alteration of police reports, Trans Union fraud investigators found aspects of Plaintiff's case inconsistent or incredible. Plaintiff had received a second Social Security number in 1998. His explanations for the second number varied. According to discovery responses produced by Plaintiff, he informed the Washington Attorney General's office in 2001 that he had gotten the second Social Security number because of identity theft and because he wanted to

ORDER - 2

"start over." In May 2004 he told Ms. Terrell of Trans Union that he had gotten the second number because he had moved from Canada.[1] In October and November 2005, after he had filed his complaint against Trans Union, Plaintiff told Trans Union attorney Jeremy Rhyne two different stories regarding the second Social Security number: first, that he had gotten the number because his original was too similar to his brother's and later, because he believed he was being stalked and that his life was threatened.

Due to Plaintiff's alteration of police records, Trans Union refused to remove several accounts from Plaintiff's credit record that Plaintiff claimed were the result of fraud. Trans Union also reinserted accounts that it had previously removed from his credit file. Ms. Terrell of Trans Union sent a letter to AllianceOne Receivables Management stating that she believed Plaintiff was using multiple Social Security numbers concurrently and that she believed he was trying to clear up bad credit using any means possible. Trans Union also apparently deleted records of accounts establishing Plaintiff's good credit.

Plaintiff filed a complaint against Trans Union in King County District Court in December 2004, claiming (among other things) that the company had violated the Fair Credit Reporting Act (FCRA) by inaccurately reporting fraudulent accounts and failing to investigate information thoroughly. Plaintiff also brought claims for libel and defamation of character, based on Ms. Terrell's letter to AllianceOne Receivables Management regarding her belief that Plaintiff was using multiple Social Security number concurrently. Trans Union removed the case to this Court later that month. On November 17, 2005, Plaintiff filed a motion to voluntarily dismiss this matter with prejudice. The Court granted the motion. Trans Union then filed this motion for attorneys' fees on the ground that Plaintiff had filed the action in bad faith or for purposes of harassment.

---

[1] In his interrogatory responses, Plaintiff did not indicate that he had lived in Canada at any time during the past ten years. (Dkt. No. 19, Ex. A at 5).

ORDER - 3

## Analysis

Because Plaintiff voluntarily dismissed his action with prejudice, Trans Union is the prevailing party in this litigation. Section 1681n(c) of the FCRA provides as follows:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

15 U.S.C. § 1681n(c). The term "bad faith" is not defined in the statute. In general, bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." Black's Law Dictionary 139 (6th ed. 1990); accord United States v. Manchester Farming P'ship, 315 F.3d 1176, 1183 (9th Cir. 2003) (applying Black's definition of bad faith).

There is little case law applying Section 1681n(c). However, the Court finds that Plaintiff's conduct supports a finding that he filed his complaint and pursued this action in bad faith and for the purpose of harassment. It is undisputed that Plaintiff sent altered police records to Trans Union in an attempt to get Trans Union to remove accounts from his credit file. Plaintiff's complaint is based on alleged errors in his credit report between March and December of 2004. In May 2004, Trans Union uncovered the fact that Plaintiff had submitted altered police records during this period. Plaintiff threatened to sue the company during this time and then filed his complaint in December 2004, despite the justifiable suspicion and obvious confusion that fraud investigators at Trans Union would have had about his credit record given his admitted alteration of police records.[2] For Plaintiff to bring suit against Trans Union after committing such a blatant act of dishonesty strikes the Court as a plain example of filing a lawsuit in bad faith and for purposes of harassment.

---

[2] Plaintiff alleged in his complaint that he had provided Defendant with "a copy of documentation to support his claim to be the victim of Identity Theft" in March 2004 and that "defendant stated that the police report provided to them was insufficient to meet the requirements to suppress fraudulent credit information" in May 2004 (Complaint ¶¶ 8-9). These allegations are misleading at best. The documentation that Plaintiff provided Trans Union in March 2004 were altered police records, and Plaintiff admitted to Trans Union in May 2004 that he had altered these police records.

ORDER - 4

Plaintiff has also given conflicting stories regarding his second Social Security number to Trans Union employees and attorneys, as well as to the Washington Attorney General's office. The record includes at least four different explanations that Plaintiff has given for having a second Social Security number.

In addition, Plaintiff's conduct during discovery in this case was extremely uncooperative. He repeatedly failed to respond to discovery requests in a timely manner. During the period of July 8 through October 10, 2005, his excuses given to Trans Union attorney Jeremy Rhyne for his inability to respond to discovery requests included that he had never received the requests, that he had recently been married, that he was out of the country, and that his son had been diagnosed with a terminal disease. After Trans Union indicated that it intended to file a motion to compel discovery and for sanctions, Plaintiff filed a motion to dismiss his case voluntarily.

Trans Union requests $17,975.14 in attorneys' fees and costs for defending this action. Trans Union's attorneys and support staff billed 67.6 hours to this case, with attorney time billed at a blended rate of $265 per hour for all attorneys who worked on the case and a limited amount of support staff time billed at $70-$75 per hour. Trans Union also requests $274.14 in costs. The Court finds that the fees and costs requested are reasonable under the circumstances, particularly in light of the added time that was required due to the difficulties in obtaining discovery from Plaintiff.

## Conclusion

The Court finds that Plaintiff filed his complaint and pursued this action in bad faith and for purposes of harassment. Plaintiff altered police records in an attempt to have accounts deleted from his credit record with Trans Union, gave conflicting explanations for his use of multiple Social Security numbers, and engaged in obstructionist behavior during discovery. The Court GRANTS Trans Union's request for attorneys' fees and costs in the amount of $17,975.14.

//
//
//

ORDER - 5

1     The Clerk shall send a copy of this order to Plaintiff and to all counsel of record.

2     Dated: May 25, 2006.

3                                               s/Marsha J. Pechman
                                                  Marsha J. Pechman

4                                                   United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 6

# Official Public Records
## Search Results

**Snohomish County, Washington**
**County Auditor**

*Menu · New Search · Prefs · Help*

**Criteria:** Grantor or Grantee Begins with SHIPLEY, RYAN Filed between 01/01/2004, 11/13/2006

**Search Results** - 13 matches

Displaying Records 1 to 10

Jump to Page: 1 2

| Instrument Number | Date Filed | Document Type | Grantor (+) = More Names | Grantee (+) = More Names | Legal Description | Index Status | Image |
|---|---|---|---|---|---|---|---|
| 200404230825 | 04/23/2004 | DEEDS(EXCEPT QCDS) | QUILL COVE L L C (+) | SHIPLEY RYAN | LOT 39 MISSION RIDGE 3 00945900003900 | Perm | |
| 200404230826 | 04/23/2004 | DEED OF TRUST | SHIPLEY RYAN (+) | C T X MORTGAGE COMPANY L L C (+) | LOT 39 MISSION RIDGE 3 00945900003900 | Perm | |
| 200405065165 | 05/06/2004 | EXCISE AFFIDAVIT | QUILL COVE L L C (+) | SHIPLEY RYAN | 565923 | Perm | |
| 200408130163 | 08/13/2004 | LIEN | SHIPLEY RYAN | LAKE STEVENS SEWER DISTRICT | LOT 39 MISSION RIDGE 3 00945900003900 | Perm | |
| 200410290147 | 10/29/2004 | SATISFACTION OF LIEN | LAKE STEVENS SEWER DISTRICT | SHIPLEY RYAN | | Perm | |
| 200504040761 | 04/04/2005 | DEED OF TRUST | SHIPLEY RYAN (+) | GENISYS FINANCIAL CORP (+) | LOT 39 MISSION RIDGE 3 00945900003900 | Perm | |
| 200605170433 | 05/17/2006 | DEED OF TRUST | SHIPLEY RYAN (+) | MILA INC (+) | LOT 39 MISSION RIDGE 3 00945900003900 | Perm | |
| 200605170434 | 05/17/2006 | DEED OF TRUST | SHIPLEY RYAN (+) | MILA INC (+) | LOT 39 MISSION RIDGE 3 00945900003900 | Perm | |
| 200606130369 | 06/13/2006 | RECONVEYANCE | WELLS FARGO (+) | SHIPLEY RYAN (+) | | Perm | |
| 200607050545 | 07/05/2006 | RECONVEYANCE | REGIONAL TRUSTEE SERVICES CORP (+) | SHIPLEY RYAN (+) | | Perm | |

Jump to Page: 1 2

For issues with this software, please check the FAQ.

Internet Public Access Module Version 3.1
Copyright 2001, 2002 Hart InterCivic, Inc. All Rights Reserved.

**EXHIBIT B**

11/14/06

# Official Public Records
## Search Results

**Snohomish County, Washington**
**County Auditor**

*Menu · New Search · Prefs · Help*

Criteria: Grantor or Grantee Begins with SHIPLEY, RYAN Filed between 01/01/2004, 11/13/2006

Search Results - 13 matches

Displaying Records 11 to 13

Jump to Page: 1 **2**

| Instrument Number | Date Filed | Document Type | Grantor (+) = More Names | Grantee (+) = More Names | Legal Description | Index Status | Image |
|---|---|---|---|---|---|---|---|
| 200403290051 | 03/29/2004 | SEPARATION REC REQ ACCESS | SHIPLEY RYAN P | PUBLIC | | Perm | |
| 200507054055 | 07/05/2005 | MARRIAGE APPLICATION | SHIPLEY RYAN PAUL | MARSH HEATHER MARIE | | Perm | |
| 200509134004 | 09/13/2005 | MARRIAGE CERTIFICATE | SHIPLEY RYAN PAUL | MARSH HEATHER MARIE | | Perm | |

Jump to Page: 1 **2**

For issues with this software, please check the FAQ.

Internet Public Access Module Version 3.1
Copyright 2001, 2002 Hart InterCivic, Inc. All Rights Reserved.